## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Lakeshia Butler, as Personal Representative of the Estate of Lason Butler, | ] ] |
| Plaintiff, | ] ] |
| vs. | ] **COMPLAINT** ] |
| Richland County; Shane Kitchen, in his individual and official capacities; Maurice Callahan, in his individual capacity; Lance Coleman, in his individual capacity; Curtis Bufford, in his individual capacity; Kevin McCullough, in his individual capacity; and Felipe Milhouse in his individual capacity, | ] ] C/A No: ] ] ] ] ] |
| Defendants. | ] |

Plaintiff Lakeshia Butler (hereinafter "Plaintiff"), through her respective undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 on behalf of her son, Lason Butler (hereinafter "the Decedent") against Richland County (hereinafter "Defendant County" or "Richland County" or "County"), Shane Kitchen, Maurice Callahan, Lance Coleman, Curtis Bufford, Kevin McCullough, and Felipe Milhouse (collectively hereinafter "the Detention Defendants").

### **PARTIES**

1.     Plaintiff Lakeshia Butler is the mother of Lason Butler and is the duly appointed personal representative of his estate. Plaintiff is a citizen of South Carolina and resides in Orangeburg County.

2.     Richland County is a county in South Carolina which owns and operates the Alvin S. Glenn Detention Center (ASGDC).

3. On information and belief, Defendant Shane Kitchen is a citizen of South Carolina and resides in Richland County, South Carolina, and was the Interim Director of the ASGDC in Richland County at all times relevant to this Complaint. He is being sued in both his individual and official capacities.

4. On information and belief, Defendant Maurice Callahan is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a correctional officer at ASGDC at all times relevant to this complaint. He is being sued in his individual capacity.

5. On information and belief, Defendant Lance Coleman is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a correctional officer at ASGDC at all times relevant to this complaint. He is being sued in his individual capacity.

6. On information and belief, Defendant Curtis Bufford is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a correctional officer at ASGDC at all times relevant to this complaint. He is being sued in his individual capacity.

7. On information and belief, Defendant Kevin McCullough is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a correctional officer at ASGDC at all times relevant to this complaint. He is being sued in his individual capacity.

8. On information and belief, Felipe Milhouse is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a correctional officer at ASGDC at all times relevant to this complaint. He is being sued in his individual capacity.

9. At all times relevant to this complaint, Defendants Shane Kitchen, Maurice Callahan, Lance Coleman, Curtis Bufford, Kevin McCullough, and Felipe Milhouse acted under color of state law, in the course and scope of their employment as employees of ASGDC, with respect to the allegations herein.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over the claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

11. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391 (b)(1) & (2). as most of the Defendants reside in this District and the acts or omissions complained of occurred within this District.

## FACTUAL ALLEGATIONS

12. As early as February 2020, Richland County knew that housing mental health inmates in the Special Housing Unit (SHU) was improper and adversely affected such inmates' mental health. In a February 2020 report, the administrator of ASGDC at that time reported to the Richland County Council that the SHU "is not conducive to housing detainees with mental health needs. In fact, the lack of appropriate housing negatively impacts a detainee's mental health state due to prolonged confinement of 22-23 hours per day."

13. Further, Richland County routinely short staffed the ASGDC of detention center officers and personnel with such severity that it adversely affected servicing the inmate population in the SHU and elsewhere throughout the jail.

14. On January 31, 2022, Decedent Lason Butler was charged with a misdemeanor failure to stop for a blue light resulting in an automobile accident. Decedent Butler was evaluated by Prisma Health where he received diagnostics including a chest x-ray and a CT scan of the cervical spine. Following those diagnostics, he was released into the custody of Richland County.

15. Upon intake to ASGDC, Decedent was noted to be exhibiting some erratic behavior but was determined to be responsive and able to provide information. His weight was noted to be 257 pounds.

16. Because of this erratic behavior, the Decedent was assigned to the Special Housing Unit

(SHU) even though Defendant Richland County knew housing an inmate with mental health needs there was inappropriate and improper.

17.     On February 1, 2022, it was noted that Decedent refused to be seen at the medical clinic.

18.     On February 2, 2022, Lakeshia Butler contacted Defendant Kitchen with concern that she did not get a phone call from Decedent. Defendant Kitchen expressed that he would try to arrange for a phone call or visual visit.

19.     Lakeshia Butler did not hear back from anyone from ASGDC until February 10, 2022.

20.     On February 7, 2022, ASGDC received an incident report from an inmate who stated that Decedent's cell was covered in feces and that Decedent was barking like a dog.

21.     It was not until February 8, 2022, that ASGDC made Decedent Butler available for his initial mental health assessment. In that assessment, it was noted that "patient appeared floridly psychotic and would not respond to the MHP upon approach." The evaluation noted that Decedent Butler was thinking about suicide or harming someone but was unable to answer as to why.

22.     Also on February 8, 2022, Decedent Butler was observed lying on the floor of his cell unclothed with torn drink cartons in the cell, the toilet was unflushed, and the cell was unsanitary.

23.     The mental health professional noted that "the patient was disengaged from this MHP and would not allow himself to be assessed. It was difficult to assess thought content. This encompassed ideas of reference, obsessive thoughts, compulsive behaviors, perceptual disturbances, impairment in reality testing, or psychotic distortions. It was uncertain whether patient endorsed any SI/HI intent, plans, or means."

24.     On February 10, 2022, Decedent continued to appear disheveled with his housing area disorganized. It was further noted that he had been eating and drinking. It was not documented how this was known, as Decedent was noted to be providing a blank stare, reported abusing substances in

the community but could not recall the name of the substance, and displayed bizarre gestures.

25. Also on February 10, 2022, Defendant Bufford told Lakeshia Butler that Decedent was in no shape for visitors, she could not see him, and that "all we can do is pray for him."

26. Additionally, on February 10, 2022, Defendant Kitchen apologized to Lakeshia Butler for failing to provide the family with updates.

27. On February 10, 2022, Sergeant Tuttle told Deneathra Butler, Decedent's aunt, that Decedent was fine. It is unknown as to whether Sergeant Tuttle did anything to check on Decedent.

28. On February 11, 2022, Lakeshia Butler, Deneathra Butler, and Clara Butler met with Defendant Kitchen in front of the ASGDC. Defendant Kitchen advised that he had just come from the medical unit and had spoken with medical providers. Defendant Kitchen advised Decedent's family as follows: that Decedent answered "no" to every question posed by medical personnel. Defendant Kitchen further stated that Decedent was eating, could say "yes", was still detoxing (although failed to indicate from what substances), and that he was not given medications to counteract with his current status. Finally, Defendant Kitchen stated that Decedent did not meet the criteria to be moved to another facility and that he would not be transferred at that point.

29. On February 11, 2022, Decedent was noted to be psychotic in his cell, naked, and reportedly refused to dress to come to the clinic.

30. On February 11, 2022, mental health providers went to Decedent's cell after he refused to go to the Psych Clinic. The mental health providers noted that Decedent was in his cell lying nude on a mattress on the floor. The mental health providers further noted Decedent appeared weak, as evidenced by his struggling to hold his head up. While Decedent was noted to be responding to questions, though his tone was so low and soft it was difficult to hear him. They noted that it was unclear if he was eating or drinking. Decedent's cell was noted to be unsanitary with paper all on

the floor, flies around, and the toilet unflushed. It was decided to move Decedent to the first-tier line of sight and place him on constant watch to monitor progress and intake of foods and liquids.

31. A suicide watch initial assessment on February 11, 2022 noted that Decedent refused to answer questions, was placed on suicide watch because of increased concerns about patient not responding to staff; lying on the floor nude; not eating or drinking; that his memory was impaired; that he had poor judgment; poor insight; limited interactions; lack of self-care, eating, and sleeping; flat affect; and that it was not possible to verbally communicate with Decedent because he was lying on the floor nude and unresponsive to direct questions.

32. Nurse Maria Davila spoke with an employee of ASGDC and secured her blood pressure cuff, pulse ox, and thermometer because she was going back to the SHU to check on Decedent because he did not look good and said that she believed that Decedent needed to be sent for treatment.

33. Defendant Milhouse declined to open Decedent's cell door for Nurse Davila to examine the Decedent because, he told her, he thought Decedent was faking and Defendant Milhouse was the only officer working the SHU.

34. On February 11, 2022, Decedent was placed on constant watch, was noted to be lethargic and noted to have not consumed any food. As a result, it was ordered to monitor intake of food and liquids from February 12, 2022, through February 14, 2022.

35. On February 11, 2022, Defendant Bufford emailed Defendant McCullough for Decedent to see mental health.

36. On that same day, LPC Laurinda Saxon-Ward told Defendant McCullough to put Decedent on suicide watch and that Decedent looked weak. Defendant McCullough was told that they were to monitor his food intake because he was not eating.

37. Defendant McCullough went to move Decedent, but Decedent was too weak, though he noted Decedent indicated he was ok with being moved but that he would not cooperate. Defendant McCullough got a board to move Decedent. Defendant McCullough noted that Decedent was never standing during the interactions regarding moving him for suicide watch.

38. An eyewitness shared his observations, including that one of the guards moving Decedent while he was naked at one time dropped the board and that Decedent appeared to be completely unresponsive at that time.

39. The same eyewitness stated that while on suicide watch, Decedent was not eating or being given medications during that time.

40. An eyewitness was told that the Decedent was not sent out to the hospital for care because of staffing shortages at ASGDC.

41. Defendant Coleman started Decedent's suicide watch at 6:40pm on February 11, 2022, noting that Decedent was resting in various positions (stomach, side, back) in different locations in his cell throughout the night. Defendant Callahan also conducted the suicide watch, noting that Decedent was resting each time. The suicide watch log does not indicate how Defendant Coleman or Callahan determined Decedent was resting.

42. Defendant Coleman attempted to serve Decedent breakfast on February 12, 2022, at 6:20am. At 7:20am, Defendant Coleman contacted Defendant Callahan to check Decedent because he did not take his breakfast because Defendant Coleman though Decedent was sleeping.

43. Defendant Callahan checked on Decedent and, upon observing Decedent unresponsive, ordered a code blue.

44. EMS was called and pronounced Decedent dead shortly thereafter.

45. Decedent was found with fresh rat bites on his body and his cell had no running water.

46. Upon autopsy, it was determined that Decedent's cause of death was dehydration.

47. Decedent's autopsy showed a weight of 215 pounds.

48. Each Defendant had an opportunity to observe Decedent's serious medical needs that required medical attention and hospitalization and failed to provide access for him to have those serious medical needs met.

**FOR A FIRST CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment)**
**(Detention Defendants – Wrongful Death Action)**

49. Plaintiff repeats and realleges the previous paragraphs as if fully restated herein.

50. Defendants have an affirmative duty to provide for the basic needs of persons, including food, clothing, shelter, water, and sanitary conditions to individuals in their custody and care, including Decedent.

51. Decedent was housed in the Special Housing Unit in unsanitary conditions that included human feces, lack of running water, and infestation with flies and rodents.

52. The conduct and actions of the Detention Defendants, acting under color or state law, in failing to provide Decedent sanitary conditions were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

53. This failure to provide Decedent basic sanitary conditions constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

54. Each of the Detention Defendants are liable to Plaintiff for Decedent's pain and suffering, and death.

**FOR A SECOND CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment)**
**(Detention Defendants – Survival Action)**

55. Plaintiff repeats and realleges the previous paragraphs as if fully restated herein.

56. Defendants have an affirmative duty to provide for the basic needs of persons, including food, clothing, shelter, water, and sanitary conditions to individuals in their custody and care, including Decedent.

57. Decedent was housed in the Special Housing Unit in unsanitary conditions that included human feces, lack of running water, and infestation with flies and rodents.

58. The conduct and actions of the Detention Defendants, acting under color or state law, in failing to attend provide Decedent sanitary conditions were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

59. This failure to provide Decedent basic sanitary conditions constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

60. Each of the Detention Defendants are liable to Plaintiff for Decedent's death.

**FOR A THIRD CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(Defendant Richland County and Defendant Kitchen – Wrongful Death Action)**

61. Plaintiff repeats and realleges the previous paragraphs as if fully restated herein.

62. Defendants have an affirmative duty to provide basic needs including food, clothing, shelter, water, sanitary conditions, and access to medical care to individuals in their custody and care, including Decedent.

63. Decedent was a mental health patient improperly housed in the Special Housing Unit in unsanitary conditions that included human feces, lack of running water, and infestation with flies and rodents.

64. Notwithstanding Defendant Richland County's knowledge that the SHU was unsuitable for inmates with mental health problems, Defendant Richland County housed Decedent there anyway based upon its normal pattern and practice.

65. Further, upon information and belief, Defendant Richland County and Defendant Kitchen failed to appropriately staff the SHU to address inmates' mental health needs and failed to ensure that mental health inmates had more than only one or two hours outside of their cells when such isolation only served to enhance and exacerbate inmates' mental health needs.

66. Further, on information and belief, Defendant Richland County and Defendant Kitchen were aware of the unsanitary conditions in the SHU, including flies and rodents and failed to ameliorate those conditions before housing Decedent there.

67. The conduct and actions of these Defendants, acting under color or state law, in failing to attend provide Decedent sanitary conditions, access to health care, and relief from solitary confinement was unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused death.

68. This failure to provide Decedent basic sanitary conditions constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

69. Defendant Richland County and Defendant Kitchen are liable to Plaintiff based upon these improper practices.

**FOR A FOURTH CAUSE OF ACTION**
**(Unconstitutional Conditions of Confinement**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(Defendant Richland County and Defendant Kitchen – Survival Action)**

70. Plaintiff repeats and realleges the previous paragraphs as if fully restated herein.

71. Defendants have an affirmative duty to basic needs of persons, including food, clothing, shelter, water, sanitary conditions, and access to medical care to individuals in their custody and care, including Decedent.

72. Decedent was a mental health patient improperly housed in the Special Housing Unit in unsanitary conditions that included human feces, lack of running water, and infestation with flies and rodents.

73. Notwithstanding Defendant Richland County's and Defendant Kitchen's knowledge that the SHU was unsuitable for inmates with mental health problems, Defendants housed Decedent there anyway based upon the facility's normal pattern and practice.

74. Further, upon information and belief, Defendant Richland County and Defendant Kitchen failed to appropriately staff the SHU to address inmates' mental health needs and failed to ensure that mental health inmates had more than only one or two hours outside of their cells when such isolation only served to enhance and exacerbate inmates' mental health needs.

75. Further, on information and belief, Defendant Richland County and Defendant Kitchen were aware of the unsanitary conditions in the SHU, including flies and rodents and failed to ameliorate those conditions before housing Decedent there.

76. The conduct and actions of these Defendants, acting under color of state law, in failing to provide Decedent sanitary conditions, access to health care, and relief from solitary confinement was unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference

and/or reckless disregard for Decedent's basic human needs, and caused needless pain and suffering.

77. This failure to provide Decedent basic sanitary conditions constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

78. Defendant Richland County and Defendant Kitchen are liable to Plaintiff based upon these improper practices.

### FOR A FIFTH CAUSE OF ACTION
### (Deliberate Indifference to Serious Medical Needs
### in Violation of the Fourteenth Amendment)
### (Detention Defendants – Wrongful Death Action)

79. Plaintiff craves specific reference to Paragraphs 28 and 32 through 40 for this cause of action.

80. The Detention Defendants had an affirmative duty to provide Decedent with adequate medical care during his confinement.

81. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Decedent's serious medical needs in violation on the Fourteenth Amendment.

82. The conduct and actions of the Detention Defendants, acting under color of state law, in failing to provide Decedent access to adequate medical care were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

83. This failure by the Detention Defendants to provide Decedent with access to adequate medical care constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

84. Each of the Detention Defendants are liable to Plaintiff for his death.

## FOR A SIXTH CAUSE OF ACTION
### (Deliberate Indifference to Serious Medical Needs
### in Violation of the Fourteenth Amendment)
### (Detention Defendants – Survival Action)

85. Plaintiff craves specific reference to Paragraphs 28 and 32 through 40 for this cause of action.

86. The Detention Defendants had an affirmative duty to provide Decedent with adequate medical care during his confinement.

87. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Decedent's serious medical needs in violation on the Fourteenth Amendment.

88. The conduct and actions of the Detention Defendants, acting under color of state law, in failing to provide Decedent access to adequate medical care were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

89. This failure by the Detention Defendants to provide Decedent with access to adequate medical care constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

90. Each of the Detention Defendants are liable to Plaintiff for his death.

## FOR A SEVENTH CAUSE OF ACTION
### (Deliberate Indifference to Serious Medical Needs
### in Violation of the Fourteenth Amendment and
### <u>Monell v. Department of Social Services of City of New York</u>)
### (Defendant Richland County and Defendant Kitchen – Wrongful Death Action)

91. Plaintiff craves specific reference to Paragraphs 28 and 32 through 40 for this cause of action.

92. Defendant Richland County and Defendant Kitchen had an affirmative duty to provide Decedent with adequate medical care during his confinement.

93. The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference

to Decedent's serious medical needs in violation on the Fourteenth Amendment.

94.     The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by these Defendants of understaffing their facility such that detainees are routinely prevented from being examined by medical staff and from being sent for outside medical care when necessary.

95.     The conduct and actions of these Defendants, acting under color of state law, in failing to provide Decedent access to adequate medical care were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

96.     This failure to provide Decedent access to adequate medical care constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

97.     Each of these Defendants is liable to Plaintiff for his death.

**FOR A SEVENTH CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment and**
**Monell v. Department of Social Services of City of New York)**
**(Defendant Richland County and Defendant Kitchen – Survival Action)**

98.     Plaintiff craves specific reference to Paragraphs 28 and 32 through 40 for this cause of action.

99.     Defendant Richland County and Defendant Kitchen had an affirmative duty to provide Decedent with adequate medical care during his confinement.

100.    The facts as stated in the above-referenced paragraphs demonstrate a deliberate indifference to Decedent's serious medical needs in violation on the Fourteenth Amendment.

101.    The facts as stated in the above-referenced paragraphs demonstrate a pattern and practice by these Defendants of understaffing their facility such that detainees are routinely prevented from being examined by medical staff and from being sent for outside medical care when necessary.

102. The conduct and actions of these Defendants, acting under color of state law, in failing to provide Decedent access to adequate medical care were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Decedent's basic human needs, and caused needless suffering and death.

103. This failure to provide Decedent access to adequate medical care constitutes a violation of Decedent's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

104. Each of these Defendants is liable to Plaintiff for his death.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorneys' fees to Plaintiffs for the civil rights causes of action under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Loss of earnings and/or earning capacity;

e. Punitive damages;

f. Loss to Plaintiff of familial relationship with Lason Butler, love, companionship, comfort, support, society, care, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of the death of Lason Butler; and,

g. Such other and further relief as this Court may deem appropriate.

**STROM LAW FIRM, LLC**

*s/ Bakari T. Sellers*
Bakari T. Sellers (SC Fed. ID No. 11099)
Joseph Preston Strom (SC Fed. ID No. 4354)
Mario A. Pacella (SC Fed. ID No. 7538)
Amy E. Willbanks (SC Fed. ID No. 13537)
Alexandra Benevento (SC Fed. ID No. 10734)
6923 N. Trenholm Road, Suite 200
Columbia, South Carolina 29206
Phone: (803) 252-4800
Email: bsellers@stromlaw.com
        petestrom@stromlaw.com
        mpacella@stromlaw.com
        awillbanks@stromlaw.com
        abenevento@stromlaw.com

*Attorneys for Plaintiff*

**THE LAW OFFICE OF AUDIA JONES**

Audia Jones (Tex. Fed. ID No. 3365076)
450 Louisiana Street, Suite 400
Houston, TX 77006
Phone: (713) 714-6519
Email: audia@audiajones.com

*Appearance pursuant to Local Rule 83.I.06 pending admission Pro Hac Vice*

August 4, 2022
Columbia, South Carolina